**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| BONUTTI SKELETAL INNOVATIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>LINVATEC CORPORATION AND CONMED CORPORATION<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C.A. No. 6:12-cv-01379-Orl-22TBS

**DEFENDANTS' MOTION TO LIMIT THE NUMBER OF
CLAIMS ASSERTED BY PLAINTIFF**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    BACKGROUND .........................................................................................................3

III.   LEGAL STANDARDS ...............................................................................................5

IV.   ARGUMENT ..............................................................................................................6

      A.     Patent Cases Typically Proceed To Trial With Less Than 10 Claims. ...................6

      B.     Claim Limits, As Used By Many Courts, Make Cases Manageable. ......................8

      C.     Limits on the Number of Claim Construction Disputes Streamlines The
            Initial Claim Construction Hearing, But Not The Case. ...........................................9

      D.     Claims Limits Will Make This Case More Manageable. ......................................10

      E.     Only Linvatec Is Prejudiced Without Claim Limits. .............................................12

            1.     Linvatec Cannot Fairly Prepare Its Defenses Until It Knows The
                  Real Claims At Issue..................................................................................12

            2.     Bonutti Has All The Information That It Needs To Select Its
                  Claims. ......................................................................................................12

            3.     The Patents And Asserted Claims Are Largely Duplicative. ....................14

V.    CONCLUSION.........................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Auto Wax Co. v. Mark V Products*,
  No. 3:99-cv-0982-M, 2001 WL 292597 (N.D. Tex. March 14, 2001) ........................................ 5

*Brocade Communication Sys. Inc. v. A10 Networks, Inc.*,
  No. 10-cv-3428-PSG, slip op. (N.D. Cal. July 5, 2012) ............................................................ 10

*Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.*,
  No. Civ. A. 04-0038 JJF, 2005 WL 2304190 (D. Del. Sept. 20, 2005) ...................................... 7

*Fleming v. Cobra Elecs. Corp.*,
  No. 1:12-CV-392-BLW, 2013 WL 1760273 (D. Idaho Apr. 24, 2013) ................................... 13

*Fractus, S.A. v. Samsung Elecs. Co.*,
  No. 6:09-cv-203, slip op. (E.D. Tex. March 8, 2010) ............................................................... 13

*Havco Wood Products, LLC v. Industrial Hardwood Products, Inc.*,
  Case No. 10-cv-566-WMC, 2011 WL 5513214 (W.D. Wis. Nov. 10, 2011) .......................... 13

*Hearing Components, Inc. v. Shure, Inc.*,
  No. 9:07-cv-104, 2008 WL 2485426 (E.D. Tex. June 13, 2008) .............................................. 11

*High Point Sarl v. Sprint Nextel Corp.*,
  No. 09-2269-CM-DJW, 2010 WL 1292710 (D. Kan. March 29, 2010) ................................... 14

*In re Katz Call Processing Patent Litig.*,
  No. 7-ml-1816, slip. op. (C.D. Cal. Aug. 31, 2007) ......................................................... 6, 9, 11

*In re Katz Interactive Call Processing Patent Litig.*,
  639 F.3d 1303 (Fed. Cir. 2011) ...................................................................................... passim

*Joao Control & Monitoring Sys., LLC v. Chrysler Group, LLC*,
  No. 13-0053, slip op. (S.D.N.Y. July 15, 2013) ......................................................................... 5

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ..................................................................................................................... 5

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996) .................................................................................................................. 2, 9

*Masimo Corp. v. Philips Elecs. N.A. Corp., et al.*,
  918 F. Supp. 2d 277 (D. Del. 2013) ....................................................................................... 7, 8

*Medtronic Minimed, Inc. v. Animas Corp.*,
  No. CV 12-044471 RSWL (RZx), 2013 WL 3322248 (C.D. Cal. April 5, 2013) ................. 5, 7

*Network Protection Sciences, LLC v. Fortinet, Inc.*,
  No. C 12-01106 WHA, 2013 WL 1949051 (N.D. Cal. May 9, 2013) ........................................ 6

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) ........................................................................................... 2, 9

*Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*,
  180 F.R.D. 254 (D.N.J. 1997) ................................................................................................. 8

*Round Rock Research LLC, v. Dell Inc.*,
  No. 4:11-CV-332, 2012 WL 8017390 (E.D. Tex. March 26, 2012) .................................... 8, 11

*Smartphone Tech., LLC v. Research in Motion Corp.*,
  No. 10-cv-074-LED-JDL, slip op. (E.D. Tex. Jan. 13, 2012) ................................................. 9

*Stamps.com Inc. v. Endicia, Inc.*,
  437 Fed. Appx. 897 (Fed. Cir. 2011) ...................................................................................... 5

*Unwired Planet LLC v. Apple, Inc.*,
  No. 12-00505, slip op. (D. Nev. Apr. 17, 2013).......................................................................... 5

*Unwired Planet LLC v. Google Inc.*,
  No. 12-cv-0504-MMD, slip op. (D. Nev. Oct. 10, 2013)...................................................... 5, 7

## STATUTES

35 U.S.C. § 112......................................................................................................................... 11

## OTHER AUTHORITIES

*http://www.cafc.uscourts.gov/images/model_orders.pdf* ............................................................ 6

## RULES

Fed. R. Civ. P. 1 ........................................................................................................................ 5

## MOTION TO LIMIT THE NUMBER OF CLAIMS ASSERTED BY PLAINTIFF

Linvatec Corporation and ConMed Corporation (collectively, "Linvatec") respectfully requests the Court limit the number of claims asserted by Plaintiff Bonutti Skeletal Innovations, LLC ("Bonutti").  Specifically, Linvatec requests that the Court limit the number of asserted claims to either Option (1) no more than 16 claims by November 8, 2013 (before claim construction briefs are filed) or Option (2) no more than 32 claims on November 8, 2013 (before claim construction briefs are filed), and to no more than 16 claims, selected from the 32 claims, within 14 days after the Court's claim construction order.  Bonutti can move to select replacement claims no later than April 25, 2014 upon a showing of good cause.  Good cause does not include an unfavorable ruling on claim construction or summary judgment or an unfavorable ruling or verdict at trial.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In its complaint, Bonutti originally asserted Linvatec infringed 15 claims from 9 asserted patents.  Bonutti has now increased the number of asserted claims from 15 to 134 claims – an increase of almost 9 times – in its infringement contentions.  This case cannot be effectively litigated with 134 asserted claims.  Such a large number of claims poses an unreasonable burden on the Court and Linvatec.

Patent cases are complicated enough.  And each asserted patent claim increases the number of issues significantly.  Each additional patent claim typically adds several issues, such as claim construction, infringement, invalidity and damages issues.  As such, patent cases do not go to trial with large number of claims (more than 10).  It is unreasonable to ask a court to decide the claim construction and summary judgment issues, or a jury to decide infringement, invalidity and damages issues, associated with a large number of claims.  As a result, there really can be no

dispute regarding whether the number of claims will be reduced, it is only a question of **_when_**.

The time for Bonutti to limit its claims is now – before claim construction.  The longer a large number of claims remain in the case, the more unnecessary work it creates for everyone – including the Court.  For example, it simply does not make sense to have the Court conduct a claim construction hearing and decide claim construction disputes associated with 134 claims when less than 10 will be brought at trial.  It would be a waste of the Court's time and resources.

While the Court has limited the number of terms for the claim construction hearing to eight, this does not change the fact that the Court must decide all claim construction disputes before it can properly instruct a jury.  The Supreme Court has held claim construction is an issue of law.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996).  And, accordingly, the Federal Circuit has held that courts must decide all claim construction disputes to properly instruct a jury.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).  Thus, while the Court can limit the initial claim construction hearing to eight terms, the Court will ultimately need to decide all the claim construction disputes before trial.

Simply put, Bonutti is moving the complexity of this case in the wrong direction.  Bonutti has had all the information that it needs to evaluate its infringement claims for a long time.  Bonutti in fact had all the information that it needed to evaluate its infringement contentions before it filed this case because all the accused products are publicly available and Linvatec has detailed information about each of these products on its website.  Linvatec has also already provided detailed noninfringement and invalidity contentions for all 134 asserted claims.

Accordingly, Linvatec respectfully requests the Court order Bonutti to Option (1) limit its case to 16 claims no later than November 8, 2013 (before claim construction briefing starts) or Option (2) limit the number of asserted claims to no more than 32 claims on November 8, 2013

(before claim construction) and to select 16 asserted claims from the set of 32 asserted claims within 14 days of the Court's claim construction order. Both of these options allow Bonutti to proceed with more than the number of claims that will proceed to trial and are more than reasonable compared to claim limits imposed in other cases. This limit will also significantly reduce the court's burden with regard to claim construction.

## II.   BACKGROUND

On September 10, 2012, Bonutti filed its original complaint, asserting 15 claims as shown in the chart below.

| Patent | Asserted Claims | Accused Product |
|---|---|---|
| U.S. Patent No. 5,527,343 ("the '343 Patent") | 1 | Impact |
| U.S. Patent No. 7,087,073 ("the '073 Patent") | 35, 39 | PopLok, CrossFT |
| U.S. Patent Nos. 5,814,072 ("the '072 Patent") | 1, 14 | PopLok |
| U.S. Patent No. 5,921,986 ("the '986 Patent") | 64, 76 | XO Button |
| U.S. Patent No. 8,147,514 ("the '514 Patent") | 1, 29 | XO Button |
| U.S. Patent No. 5,980,559 ("the '559 Patent") | 24, 34, 47 | Impact, Paladin, Duet, Bio Mini Revo, Presto, Bioanchor |
| U.S. Patent No. 6,500,195 ("the '195 Patent") | 8 | Y-Knot |
| U.S. Patent No. 6,638,279 ("the '279 Patent") | 6 | XO Button |
| U.S. Patent No. 5,718,717 ("the '717 Patent") | 93 | Impact |

On January 7, 2013, Linvatec filed a motion to dismiss Bonutti's indirect, willful, and joint infringement claims from the second amended complaint (Dkt. 28), and on April 2, 2013, the Court granted Linvatec's motion to dismiss with leave for Bonutti to amend. (Dkt. 32.) The Order expressly stated that "[a]n amended complaint offers Plaintiff the chance to remedy the pleading deficiencies identified herein, ***not to add new claims***." (*Id.* (emphasis added).)

3

Despite this order, Bonutti then served its infringement contentions, on August 15, 2013, asserting ***118 new claims*** (almost 8 times the number of claims identified in the complaint). Bonutti also added three new accused products – Super Revo, ThRevo and Bioscrew.

| Patent | Asserted Claims | Accused Product |
|---|---|---|
| The '343 Patent | 1, 4, 5, 6, 7 | Impact |
| The '073 Patent | 35, 37, 38, 39, 42 | PopLok, CrossFT, Paladin, Super Revo, ThRevo |
| The '072 Patent | 21, 23, 25, 57, 63, 78, 80, 82, 84, 85, 86, 91, 105, 106, 109, 122, 123, 126, 128, 129, 180, 185, 186, 193, 196, 198, 199, 207, 215, 216, 218, 221, 222, 223, 225, 226 | PopLok |
| The '986 Patent | 64, 65, 67, 69, 72, 73, 74, 75, 76, 79, 80, 82, 83 | XO Button, Bioscrew |
| The '514 Patent | 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29, 30, 31 | XO Button, Bioscrew |
| The '559 Patent | 24, 34, 47, 121 | Impact, Paladin, Duet, Bio Mini Revo, Presto, Bioanchor |
| The '195 Patent | 8, 9 | Y-Knot |
| The '279 Patent | 2, 3, 4, 5, 6, 7, 8, 9, 10 | XO Button, Bioscrew |
| The '717 Patent | 18, 20, 21, 22, 38, 39, 40, 41, 47, 49, 93, 94, 95, 96, 97, 98, 99, 100, 101, 104, 113, 114, 115, 116, 117, 118, 119, and 121 | Impact |

One week later, on August 22, 2013, Bonutti amended its infringement contentions to add ***six more new claims*** (i.e., claims 26, 27, 28, 123, 124 and 125 of the '559 patent) bringing the total of asserted claims to 134. Importantly, all the asserted claims and all the infringement contentions were identified and developed entirely based on publicly available information. In short, all the information that Bonutti needed to evaluate these infringement claims has been available to it before it even filed the case.

## III.    LEGAL STANDARDS

Courts have the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also* Fed. R. Civ. P. 1 (the Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding.").  In complex cases involving multiple patents and an excessive number of claims, district courts regularly implement a procedure to limit the number of asserted claims in order to promote judicial economy and to effectively manage its docket.  *See, e.g., Unwired Planet LLC v. Google Inc.*, No. 12-cv-0504-MMD, slip op. (D. Nev. Oct. 10, 2013) (attached as Ex. 1); *Joao Control & Monitoring Sys., LLC v. Chrysler Group, LLC*, No. 13-0053, slip op. (S.D.N.Y. July 15, 2013) (attached as Ex. 2); *Unwired Planet LLC v. Apple, Inc.*, No. 12-00505, slip op. (D. Nev. Apr. 17, 2013) (attached as Ex. 3); *Medtronic Minimed, Inc. v. Animas Corp.*, No. CV 12-044471 RSWL (RZx), 2013 WL 3322248 (C.D. Cal. April 5, 2013); *Auto Wax Co. v. Mark V Products*, No. 3:99-cv-0982-M, 2001 WL 292597, at *1 (N.D. Tex. March 14, 2001) (requiring plaintiff to limit number of claims to be tried from 86 to 19).

In 2011, the Federal Circuit also expressly approved the practice of limiting the number of asserted claims in *In re Katz Interactive Call Processing Patent Litig*.  639 F.3d 1303 (Fed. Cir. 2011); *see also Stamps.com Inc. v. Endicia, Inc.*, 437 Fed. Appx. 897 (Fed. Cir. 2011) (nonprecedential) (finding that the district court did not abuse its discretion in refusing to allow additional claims after reducing the number of asserted claims to 15 prior to the claim construction hearing).  In *Katz*, Katz asserted that the defendants infringed 15 patents.  *Id*. at 1308.  To make the case more manageable, the court ordered Katz to select no more than 40 claims per defendant, and after discovery (but before claim construction) to narrow the number of selected claims to 16 per defendant.  *Id.* at 1309, 1311; *In re Katz Call Processing Patent*

*Litig.*, No. 7-ml-1816, slip. op. at 2 (C.D. Cal. Aug. 31, 2007) (attached as Ex. 4).  Katz itself did not dispute the need to limit the number of claims to make the case more manageable, and offered to initially select 50 claims per defendant and then narrow the case to 20 claims per defendant after discovery but before claim construction.  *Id.* at 1309; *see In re Katz Call Processing Patent Litig.*, No. 7-ml-1816 (C.D. Cal.) at Dkt. 136 (attached as Ex. 5); Docket Report for *In re Katz Call Processing Patent Litig.*, No. 7-ml-1816 (attached as Ex. 6).  The court further provided that more claims could be added if Katz could show that the additional claims present unique issues.  *Katz*, 639 F.3d at 1312.

The Federal Circuit Advisory Council also recently published a Model Order Limiting the Number of Asserted Claims (attached as Ex. 7).  The Model Order noted that "[t]he inclusion of superfluous claims . . . can function to 'hide the ball'" resulting in "an asymmetric burden on the responding party (and the trial court) because the asserting party often has a better sense of which issues it will ultimately pursue."  *Id.* at 1.  The Model Order recognized that limiting the number of asserted claims, and therefore  "[f]ocusing patent cases to the issues at the core of the dispute will reduce the burden on courts and lower the expenses for the parties."  *Id.* at 2.  While the Federal Circuit does not sponsor or endorse this order, that is because it cannot issue advisory orders.  *See http://www.cafc.uscourts.gov/images/model_orders.pdf*.  That does not change the fact, the Federal Circuit Advisory Council developed the Model Order to help the patent bar.  *Id.*

## IV.  ARGUMENT

### A.  Patent Cases Typically Proceed To Trial With Less Than 10 Claims.

The 134 claims asserted by Bonutti cannot be presented to a jury.  *See, e.g., Network Protection Sciences, LLC v. Fortinet, Inc.*, No. C 12-01106 WHA, 2013 WL 1949051, at *3 (N.D. Cal. May 9, 2013) ("It is impractical for either side to present fifteen claims at trial. Successful patent plaintiffs almost always present only one, two or three claims to a jury.").  Nor

can the Court or the parties effectively manage the issues in this case under the current number of claims.  *See, e.g., Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.*, No. Civ. A. 04-0038 JJF, 2005 WL 2304190 (D. Del. Sept. 20, 2005) (finding the number of asserted claims at 90 to be "unreasonable" and "unwieldy" and ordering plaintiff to limit the number of asserted claims to 10); *Unwired Planet*, No. 12-cv-0504-MMD, slip op. at 6 (noting that 40 claims "is more than either party considered reasonable"); *see also Medtronic Minimed, Inc. v. Animas Corp.*, No. CV 12-044471 RSWL (RZx), 2013 WL 3322248, at *1 (C.D. Cal. April 5, 2013) (ordering the number of asserted claims reduced "for the sake of judicial economy and a prompt resolution of these issues.")  Thus, in order to ensure the effective disposition of this action, a mechanism is required to streamline the issues and focus the parties on the dispositive arguments in the case.

Patent cases typically proceed to trial with less than 10 claims because each asserted claim can significantly increase the number of issues for the judge and jury.  For example, each patent claim includes several claim terms, and therefore, each asserted patent claim can create several additional claim construction issues.  *Masimo Corp. v. Philips Elecs. N.A. Corp., et al.*, 918 F. Supp. 2d 277, 285 (D. Del. 2013) (there is a "relationship between the number of asserted claims and the number of claim terms requiring claim construction and their combined effect on the complexity of a case.").  In addition, each asserted claim can introduce additional noninfringement and invalidity defenses.  Each additional noninfringement defense creates another technical issue about the structure or operation of the accused product.  Each additional invalidity defense requires the judge and jury to learn about at least one, and probably two or three, pieces of prior art, such as earlier patents, publications or products.  And finally, each claim adds additional damages issues because it can change the scope of the invention at issue,

add additional features to the claimed invention, create additional design-arounds, and more. *See, e.g.*, *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 257-59 (D.N.J. 1997) (discussing the complexity of damages issues in patent cases).   In sum, each additional claim can increase the complexity of a case significantly.

> **B.      Claim Limits, As Used By Many Courts, Make Cases Manageable.**

Because patent cases typically go to trial with less than 10 claims, it does not make sense for the court or the parties to litigate a significantly larger number of asserted claims.  As a result, many courts order patent owners to limit the number of asserted claims.   The District of Delaware, for example, noted that "limiting . . . the number of patent claims a party may assert is well recognized."  *Masimo*, 918 F. Supp. 2d at 282.   The court specifically stated that "[t]he purpose of limiting the number of presently asserted claims to a selected group of representative claims is to streamline the issues," forcing the plaintiff to "choose truly representative claims directed to issues material to th[e] litigation."  *Id.* at 284 (requiring the plaintiff to reduce the number of asserted claims across 7 patents from 95 to 30).  Similarly, in the Eastern District of Texas (another experienced patent forum), the reduction of asserted claims is a tool regularly used to control its docket.  *See, e.g.*, *Round Rock Research LLC, v. Dell Inc.*, No. 4:11-CV-332, 2012 WL 8017390, at *2 (E.D. Tex. March 26, 2012) ("courts in the Eastern District of Texas have required plaintiffs to 'limit the number of asserted claims in cases for patent infringement when the number of claims is so large as to make the case inefficient and unmanageable.'").

The Central District of California has done the same.  In *Katz*, the patent owner asserting 15 patents, Katz, agreed that it was necessary to limit the number of claims to make the case more manageable and agreed to limit the case initially to 50 claims per defendant and then narrow the number of asserted claims to 20 per defendant after some discovery and before claim construction.  *Katz*, 639 F.3d at 1309.  The Central District of California, however, found that

Katz's limits were not enough.  *Id.* at 1309.  Instead, the Central District of California ordered Katz to limit the number of claims asserted from the 15 asserted patents to no more than 40 per defendant and, after discovery but before claim construction, to narrow the number of selected claims to 16 per defendant.  *Katz*, 639 F.3d at 1309, 1311; *In re Katz Call Processing Patent Litig.*, No. 7-ml-1816, slip. op. at 2 .  The Federal Circuit affirmed this procedure on appeal.  *Id.* at 1312.

> **C.     Limits on the Number of Claim Construction Disputes Streamlines The Initial Claim Construction Hearing, But Not The Case.**

While the Court has limited the parties to eight claim construction disputes at the claim construction hearing (Dkt. 44), this does not make the case more manageable.  This initial limit streamlines the initial claim construction hearing, but if the case does not settle, the court will then need to conduct a second claim construction hearing to decide the remaining disputes.  The Supreme Court has held that claim construction is an issue of law.  *Markman*, 517 U.S. at 391.  As such, claim construction disputes cannot be left to the jury.  As the Federal Circuit has held, the Court must decide ***all*** claim construction disputes to properly instruct a jury.  *O2 Micro*, 521 F.3d at 1362.

While some courts do initially limit the number of terms for the claim construction hearing, such courts recognize that these are only general or initial limits.  *See, e.g.*, *Smartphone Tech., LLC v. Research in Motion Corp.*, No. 10-cv-074-LED-JDL, slip op. at 1 (E.D. Tex. Jan. 13, 2012) (expanding the number of terms to be construed from the initial limit of ten to fifteen, or as many as the parties can justify as case or claim dispositive) (attached as Ex. 8).  If the case is complicated or involves multiple patents, the court either expands these limits or resolves the remaining claim construction disputes later.  *Id.*  For example, the Northern District of California generally limits the parties to 10 claim construction disputes at the initial claim construction

hearing, but increases those limits for complicated cases involving multiple patents or resolves remaining disputes later.  *See* N.D. Cal. R. 4-3(c); *Brocade Communication Sys. Inc. v. A10 Networks, Inc.*, No. 10-cv-3428-PSG, slip op. at 1-2 (N.D. Cal. July 5, 2012) (attached as Ex. 9). And, unlike limiting the number of asserted claims as discussed above, the Federal Circuit has **never** affirmed a court limiting the number of claim construction disputes so as to not decide all the claim construction disputes.

Here, the current limit of 8 claim construction disputes simply does not work for a case involving 134 asserted claims from 9 different patents.  While this limit may have worked if the case was limited to 15 asserted claims as Bonutti included in the complaints, it does not work for a case with 134 asserted claims.  That is not even one dispute per claim, or even patent.  It is one dispute for every 17 claims.  As a result, something must be done to streamline the case.

### D.     Claims Limits Will Make This Case More Manageable.

The 134 claims currently asserted from the 9 asserted patents is not manageable.  The 134 asserted claims raise a large number of claim construction disputes, and additional claim construction disputes may arise in the future.  And, unsurprisingly, the 134 asserted claims raise a substantial number of  noninfringement arguments.   *See* Linvatec's Non-infringement Contentions (attached as Ex. 10). Linvatec has further raised at least 72 anticipation and/or obviousness invalidity defenses, in addition to invalidity defenses pursuant to 35 U.S.C. § 112. The obviousness defenses involve at least 156 distinct references.  *See* Linvatec's Invalidity Contentions (attached as Ex. 11).  As a result, the 134 patent claims at issue in this case simply raise far too many issues to make this case manageable.

Linvatec, therefore, proposes that the Court adopt a procedure to limit the number of asserted claims similar to that proposed in *Katz*, a procedure that was expressly approved by the Federal Circuit.  Specifically, Linvatec respectfully requests the Court order Bonutti to Option

(1) limit the number of asserted claims on November 8, 2013 (before claim construction briefs) or at least Option (2) limit the number of claims asserted by Bonutti to no more 32 claims on November 8, 2013 before claim construction, and to select 16 claims from the 32 claim within 14 days of the Court's claim construction order.   Linvatec also proposes that Bonutti have the opportunity to add or replace certain claims upon a showing of good cause.   This procedure is more generous than the procedure affirmed by the Federal Circuit in *Katz*.   There, Katz asserted 15 patents against multiple defendants, and the court ordered Katz to limit its case to 40 claims and then, after some discovery but before claim construction, to limit the case to 16 claims selected from the previous 40: "Katz initially to select no more than 40 claims per defendant group, and after discovery to narrow the number of selected claims to 16 per defendant group." 639 F.3d at 1309.   The court in *Katz* also ordered additional limitations on the total number of claims across all defendants.   *Id*. at 1309.

The most effective time to reduce the number of asserted claims is now – before claim construction and to focus the remaining discovery on the claims most likely to proceed to trial. *Katz*, 639 F.3d at 1312-13; *see also see In re Katz Call Processing Patent Litig.*, No. 7-ml-1816 (C.D. Cal.) at Dkt. 136 (attached as Ex. 5); Docket Report for *In re Katz Call Processing Patent Litig.*, No. 7-ml-1816 (attached as Ex. 6); *Round Rock Research, LLC v. Dell Inc.*, No. 4:11-cv-332, 2012 WL 8017390, at *2 (E.D. Tex. March 26, 2012) ("The Court finds that limiting the amount of claims asserted by Plaintiff is appropriate at this time to aid in efficiency and narrowing the claims prior to claim construction"); *Hearing Components, Inc. v. Shure, Inc.*, No. 9:07-cv-104, 2008 WL 2485426, at *1 (E.D. Tex. June 13, 2008) (ordering the parties to elect no more than three representative claims for each asserted patent for claim construction and trial).

### E.   Only Linvatec Is Prejudiced Without Claim Limits.

#### 1.   Linvatec Cannot Fairly Prepare Its Defenses Until It Knows The Real Claims At Issue.

Bonutti should not be allowed to "hide the ball" by burying its trial claims within 134 asserted claims.  Ex. 7 at 1.  As the Federal Circuit has recognized, "the claimant is in the best position to narrow the dispute."  *Katz*, 639 F.3d at 1311.  Only Bonutti knows the claims that it will actually assert at trial.  Linvatec can only speculate and, until the claims are limited, Linvatec must do its best to prepare defenses for all 134 patent claims and cannot focus the preparation of its case on the real claims at issue until the number of asserted claims is reduced.

#### 2.   Bonutti Has All The Information That It Needs To Select Its Claims.

Bonutti already has all the information that its needs to select its claims.  Bonutti already has all the information necessary to form its infringement theories about the accused products because all these products are sold publicly.  ConMed Arthroscopy Catalog, *available at* http://www.conmed.com/mobile/catalogs/CCA9033Rev4_INT_Arthroscopy_Catalog.pdf.
Linvatec also has all kinds of information about these products on its website, including videos, animations, brochures, and surgical technique guides.  *See* ConMed Medical Education, *available at* http://www.conmed.com/Linvatec_ed_surgical.php.  Linvatec even produced documents relating to these surgical technique guides and videos to Bonutti on August 16, 2003. *See* Ex. 12.[1]  In addition, Linvatec has already borne the burden of producing noninfringement and invalidity contentions for the 134 asserted claims.

---

[1] Linvatec has also been prepared to produce over 133,000 pages regarding the accused products since early August, 2013, but the parties have been unable to agree to a protective order. Linvatec wants the protective order to limit the use of its highly confidential information for this case and not allow anyone involved in patent prosecution for Bonutti or its parent Acacia in this field to have access to the information such that it could be used for Bonutti or Acacia to draft new patent claims against Linvatec's products.  Linvatec filed a motion for entry of a prosecution

Bonutti argues that reducing the number of claims asserted *at this time* is premature because Bonutti requires substantive discovery including "samples and technical drawings and specifications of each accused device" in order to select a representative set of claims.  Ex. 13.  But, this is incorrect.  The technology at issue in this case is straightforward, and the information that Bonutti needs to determine whether to allege infringement of a claim is publicly available as shown by Bonutti's infringement contentions.  In fact, despite repeated requests to do so, Bonutti has not identified any specific example of confidential Linvatec information that it needs for its infringement contentions that is not publicly available.  And, based on the straight forward nature of the claims, this does not serve as a bar to reducing the number of asserted claims at this stage of the case.  *See Havco Wood Products, LLC v. Industrial Hardwood Products, Inc.*, Case No. 10-cv-566-WMC, 2011 WL 5513214, at *6 (W.D. Wis. Nov. 10, 2011) ("Based [among other things] on . . . the relatively straightforward nature of the claims and technology, allowing Havco to identify fifteen claims [from the five asserted patents at issue] seems fair, even generous."); *see also Katz*, 639 F.3d at 1313 n.9 (Fed. Cir. 2011) (noting that "a claim selection order could come too early in the discovery process" only when the plaintiff is denied "the opportunity to determine whether particular claims might raise separate issues of infringement or invalidity *in light of the defendants' accused products and proposed defenses*") (emphasis added).

In response to a similar motion by Arthrex to limit the number of claims asserted, Bonutti cites to *Fleming v. Cobra Elecs. Corp.*, No. 1:12-CV-392-BLW, 2013 WL 1760273 (D. Idaho Apr. 24, 2013), *Fractus, S.A. v. Samsung Elecs. Co.*, No. 6:09-cv-203, slip op. (E.D. Tex. March 8, 2010), and *High Point Sarl v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2010 WL 1292710

---

bar on this issue (Dkt. 63).  If the Court determines that this discovery is necessary for claim construction, Linvatec requests that the Court push back the current claim construction briefing deadlines accordingly so Linvatec can produce the documents and the claim construction briefs can be focused on the most important claims.

(D. Kan. March 29, 2010) to argue that the reduction of claims is premature when discovery has just begun.  However, these cases all involved the internal workings of electronics, which would require technical specifications in order to determine infringement.  Such is not the case here.  Further, less than five months after the court initially declined to limit the number of asserted claims in *High Point Sarl v. Sprint Nextel Corp.*, that court ordered the plaintiff to reduce the number of claims asserted to 20 from the 4 asserted patents after the parties had exchanged contentions noting "[t]he time for identifying critical issues and for narrowing the scope of the litigation, if not passed, is now."  No. 09-2269-CM-DJW, 2010 WL 9497168, at *3 (D. Kan. Aug. 18, 2010) (requiring plaintiff to reduce the number of claims for claim construction).

### 3.    The Patents And Asserted Claims Are Largely Duplicative.

Bonutti will not be prejudiced by the relief Linvatec seeks because the overwhelming majority of the asserted claims are reproductions of other asserted claims, with only minor differences, or reproduction of the same elements in different combinations.  To the extent Bonutti believes that the differences between the claims rise above mere technicality, Bonutti can move the Court to select replacement claims for good cause.  Thus, Linvatec will not be unduly burdened by litigating claims that Bonutti will not present to a jury, and Bonutti will not be prejudiced because it will have the opportunity litigate claims that present unique arguments.  *Katz*, 639 F.3d at 1311 ("When the claimant is in the best position to narrow the dispute, allocating the production burden to the claimant will benefit the decision-making process and therefore will not offend due process unless the burden allocation unfairly prejudices the claimant's opportunity to present its claim.")

The asserted claims cover a narrow range of purported inventions.  For example, the various apparatus claims of the '072 patent – the patent with the most asserted claims – claim little more than combinations of (1) a handle, (2) a shaft, (3) an anchor with a passage, (4) a

pusher surface or pusher surface means, (5) end surface means for piercing body tissue, and/or (6) positioning surface means, with few additional limitations. *See* Ex. 14. Likewise, the asserted method claims of the '072 patent essentially claim combinations of (1) providing an anchor with a passage, (2) providing an inserter with an end portion and pusher surface, (3) moving the anchor and inserter into the body, and/or (4) changing the orientation of the anchor relative to the inserter. *See id.* Bonutti could easily select a representative claim or two from the '072 patent and fairly litigate the scope of the '072 patent.[2] The remaining asserted claims in the other patents at issue follow similar suit and can be similarly limited. *See id.*

The genealogy of the patents-in-suit further demonstrates the redundancy of the claims. The patents-in-suit all share the same inventive entity and seven of the patents-in-suit are related to other patents-in-suit (i.e., the '559 and '717 patents; the '343 and '195 patents; and the '986, '279, and '514 patents).  In fact, two of the patents-in-suit are subject to terminal disclaimers over other asserted patents (the '279 patent is subject to a terminal disclaimer over the '986 patent; the '559 patent is subject to a terminal disclaimer over the '717 patent) meaning that the claimed subject matter is not patentably distinct.  The Federal Circuit agreed that these factors support reducing the number of asserted claims in *Katz.  See* 639 F.3d at 1311.

## V.    CONCLUSION

For the foregoing reasons, Linvatec respectfully requests the Court limit the number of asserted claims to Option (1) no more than 16 claims by November 8, 2013 or Option (2) no more than 32 claims by November 8, 2013 (before claim construction) and then select 16 claims

---

[2] As another example, the asserted claims of the '986 and '279 patents all claim a method for "positioning body tissue relative to a bone" by using (1) an anchor connected with a suture (2) and tensioning the suture.  Some claims add the use of a second anchor or suture retainer. *See* Ex. 14 ('986 claims 64 and 76); *id.* ('279 claim 2 and 6).

from the 32 claims within 14 days after the Court's claim construction order, allowing Bonutti to later substitute claims only upon a showing of good cause.

## RULE 3.01(G) CERTIFICATION

Pursuant to Rule 3.01(g), Rules of the United States District Court for the Middle District of Florida, the undersigned conferred with counsel for Plaintiff regarding the relief requested herein and Plaintiff's counsel did not consent to same.

Dated this 21st day of October, 2013.

/s/ Matthew J. Moore
Charles J. Cacciabeve
Florida Bar No. 329908
Charlotte L. Warren
Florida Bar No. 065803
CARLTON FIELDS, P.A.
P.O. Box 1171
Orlando, FL  32802
Telephone: 407 849-0300
Facsimile: 407 648-9099
ccacciabeve@carltonfields.com

and

Maximilian A. Grant (*pro hac vice*)
Matthew J. Moore (*pro hac vice*)
Elizabeth M. Roesel (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Telephone:  202-637-2200
Facsimile:  202-637-2201
matthew.moore@lw.com

Lisa K. Nguyen (*pro hac vice*)
LATHAM & WATKINS LLP
140 Scott Drive

Menlo Park, CA 94025
Telephone:  650-328-4600
Facsimile:  650-463-2600
lisa.nguyen@lw.com

Attorneys for Linvatec Corporation and
ConMed Corporation

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on October 21, 2013, I electronically filed a true and correct copy of the foregoing document with the Clerk of the United States District Court for the Middle District of Florida by using the CM/ECF system, which will send notice of such filing to all counsel of record.

*/s/ Lisa K. Nguyen*
Lisa K. Nguyen